83 F.3d 760
 Kenneth Dwayne DANIELS, Petitioner-Appellant,
v.
Luella BURKE, Respondent-Appellee.
 No. 95-1974.
 United States Court of Appeals,
Sixth Circuit.
 May 8, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied June 19, 1996.
 
 Anne M. Yantus (argued and briefed), State Appellate Defender Office, Detroit, MI, for petitioner-appellant.
 Kathleen Davison Hunter (argued and briefed), Asst. Atty. Gen., Office of the Atty. Gen., Habeas Div., Lansing, MI, for respondent-appellee.
 Before: KENNEDY and MOORE, Circuit Judges; WELLS,* District Judge.
 KENNEDY, Circuit Judge.
 
 
 1
 Petitioner appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, we AFFIRM.
 
 I.
 
 2
 On May 8, 1987, petitioner received a call from his girlfriend's mother, Delores Turner, from whom he learned that his girlfriend, Joann Turner Reese, was having more problems with her estranged husband, David Reese. David Reese had a history of domestic violence against Joann Turner Reese. Petitioner was familiar with David Reese's violent tendencies.
 
 
 3
 Later that night, at 12:30 a.m., petitioner arrived at the home of Delores and Joseph Turner, Sr., armed with a gun. Before witnesses, he confronted David Reese, firing his gun and hitting the refrigerator. Reese fled with petitioner in pursuit.
 
 
 4
 Witnesses then heard another gunshot. Soon after, they saw Reese returning toward the house. He had been shot but was nonetheless in pursuit of petitioner, armed with a 2x4 piece of wood. A number of witnesses stood by as the two then fought (although Joann Turner Reese ran inside to call the police). Petitioner stabbed David Reese several times during the fight. One witness testified that petitioner told someone to stand back adding, "I am going to kill this motherfucker." Reese soon fell to the ground and petitioner dragged his body underneath a nearby porch. A coroner determined that Reese died from five stab wounds and one gunshot wound.
 
 
 5
 Following the killing, a police officer took Delores Turner's written statement. That signed statement quoted Delores Turner as having said that petitioner, earlier in the evening of May 8, 1987, said that "he was tired of [Reese] and was going to kill him." The trial court admitted this evidence, overruling a hearsay objection, on the basis of the hearsay exception for a recorded recollection, MRE 803(5). See People v. Daniels, 192 Mich.App. 658, 482 N.W.2d 176, 180 (1991), appeal denied, 440 Mich. 882, 487 N.W.2d 464 (1992).
 
 
 6
 Petitioner was subsequently charged with first-degree murder and felony firearm. During its deliberations, the jury notified the trial judge that it was at an impasse and, in spite of the judge's explicit instruction not to do so, specified that jurors were divided 11-1, although the foreperson did not reveal whether the 11-1 vote was in favor of acquittal or conviction or whether the vote concerned one of the lesser included offenses to the murder count. In fact, the foreperson did not reveal which count (or whether each) was dead-locked at 11-1. At this time, defense counsel moved for a poll of the jury as to possible partial verdicts. The motion was denied. Further instruction from the trial judge failed to produce a unanimous verdict and the jury was dismissed as a hung jury.
 
 
 7
 Petitioner was brought to trial a second time. At the voir dire stage, defense counsel proposed 10 questions be asked only of prospective white jurors concerning racial attitudes.[1] The trial court concluded that since this case involved a black defendant and a black victim, the questions were irrelevant.
 
 
 8
 At the conclusion of the government's case in the second trial, defense counsel moved for a directed verdict on the charge of first-degree murder, arguing a lack of proof as to premeditation and deliberation. That motion was denied. Petitioner defended on the grounds of self-defense and the defense of another; the jury, nevertheless, convicted him of second-degree murder, M.C.L. 750.317, and felony firearm, M.C.L. 750.227b. Petitioner was sentenced to a mandatory two year sentence for felony firearm and thirty-to-fifty years for second degree murder.
 
 
 9
 Petitioner's convictions were affirmed on appeal and the Michigan Supreme Court denied discretionary review. People v. Daniels, 192 Mich.App. 658, 482 N.W.2d 176, 180 (1991), appeal denied, 440 Mich. 882, 487 N.W.2d 464 (1992). Petitioner then raised six issues in his petition for writ of habeas corpus in the United States District Court. The Court denied the petition. Daniels v. Burt, 895 F.Supp. 180 (E.D.Mich.1995).
 
 II.
 
 10
 Petitioner appeals the denial of his petition and specifically the District Court's treatment of four issues. An appellate court renders de novo review of a habeas proceeding. Cardinal v. United States, 954 F.2d 359, 362 (6th Cir.1992).
 
 
 11
 First, petitioner argues that his second trial violated his Fifth Amendment right not to be "twice put in jeopardy" for the same offense. U.S. CONST. amend. V; Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062 23 L.Ed.2d 707 (1969) (incorporating this safeguard against the states through the Fourteenth Amendment). Second, petitioner argues that the failure to direct a verdict as to first-degree murder denied him his Fifth Amendment right to due process. U.S. CONST. amend. V; Jackson v. Virginia, 443 U.S. 307, 317-18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). Third, he argues that the trial court's refusal to allow voir dire on the issue of racial prejudice denied him due process. U.S. CONST. amend. V; see Aldridge v. United States, 283 U.S. 308, 314-15, 51 S.Ct. 470, 473, 75 L.Ed. 1054 (1931). Fourth, petitioner argues that the trial court's allegedly improper admission of hearsay evidence violated his rights to due process, to a fair trial, and to confrontation of the witnesses against him. U.S. CONST. amends. V, VI, XIV. See United States v. Owens, 484 U.S. 554, 557, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988); Dutton v. Evans, 400 U.S. 74, 96-97, 91 S.Ct. 210, 223-24, 27 L.Ed.2d 213 (1970) (Harlan, J., concurring).
 
 A. The Double Jeopardy Claim
 
 12
 The Fifth Amendment of the United States Constitution declares that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V. In order to protect defendants from being tried twice on the same charge, the Supreme Court has held that, absent a motion for mistrial by the defendant, a trial court will trigger the Double Jeopardy Clause by retrying a defendant when a mistrial was granted in the absence of "manifest necessity." Richardson v. United States, 468 U.S. 317, 323-24, 104 S.Ct. 3081, 3084-85, 82 L.Ed.2d 242 (1984) (citing United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824)). Justice Story, in Perez, held that a dead-locked or hung jury constitutes "manifest necessity" of a declaration of mistrial because "the ends of justice would otherwise be defeated," and this 172 year-old rule has been "constantly adhered to" since. Richardson, 468 U.S. at 324, 104 S.Ct. at 3085 (citing Logan v. United States, 144 U.S. 263, 297-98, 12 S.Ct. 617, 627-28, 36 L.Ed. 429 (1892); Arizona v. Washington, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978)).
 
 
 13
 Petitioner does not take issue with the constitutionality of retrial following proper declaration of a mistrial due to a hung jury. Rather, it was the trial court's refusal to poll the jury for potential partial verdicts which petitioner argues was constitutionally infirm. Under the circumstances of this case, he argues, the trial judge should have polled the jury in case they were unanimous as to some of the included charges on the murder count against petitioner. Having failed to do so, petitioner argues, the record does not establish that mistrial on every charge was a "manifest necessity."
 
 
 14
 Before addressing the merits of petitioner's argument, we must first determine whether he advocates the establishment of a "new rule" as that term is used in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and its progeny. The application of Teague is a threshold question in a federal habeas case. Penry v. Lynaugh, 492 U.S. 302, 313, 109 S.Ct. 2934, 2943, 106 L.Ed.2d 256 (1989); Goeke v. Branch, --- U.S. ----, ----, 115 S.Ct. 1275, 1276, 131 L.Ed.2d 152 (1995). In this case, the State raised the defense before the District Court, JA at 310, and, if raised, a court must apply it. Goeke, --- U.S. at ----, 115 S.Ct. at 1276; see also Caspari v. Bohlen, 510 U.S. 383, ----, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994) (a court may apply Teague even if not argued by a state).
 
 
 15
 Teague constrains our ability to announce new rules in collateral proceedings. Teague, 489 U.S. at 310-15, 109 S.Ct. at 1075-78. Petitioner suggests that this case concerns the application of the age-old rule of "manifest necessity," see United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824), rather than the announcement of any "new rule" and is therefore not barred by Teague. We disagree. The old rule, which the Supreme Court has characterized as "the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause," Richardson, 468 U.S. at 324, 104 S.Ct. at 3085, by straight-forward application hardly leads to the result sought by petitioner in this case which could be characterized as "retrial following a hung jury may violate the Double Jeopardy Clause."
 
 
 16
 We recognize that determining whether a particular decision announces a "new rule" or whether it applies a well-established constitutional principle to a new case may pose a nice distinction. See Penry, 492 U.S. at 314, 109 S.Ct. at 2944; Yates v. Aiken, 484 U.S. 211, 216-17, 108 S.Ct. 534, 537-38, 98 L.Ed.2d 546 (1988). We disagree with petitioner in this case, however, because petitioner urges us to reach a "result ... not dictated by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at 301, 109 S.Ct. at 1070.[2] Establishment of the rule advocated by petitioner would "break[ ] new ground" and "impose[ ] a new obligation on the States...." This is the definition of a "new rule" for Teague purposes. See Penry, 492 U.S. at 318-19, 328-29, 109 S.Ct. at 2946-47, 2951-52; Saffle v. Parks, 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990).
 
 
 17
 Petitioner, thus, can only find relief if his argument fits within the Teague exceptions to the bar against establishment of a new rule on collateral review. Teague establishes exceptions for "certain kinds of primary, private individual conduct [placed] beyond the power of the criminal law-making authority to proscribe," and "watershed rules of criminal procedure." See Teague, 489 U.S. at 311-16, 109 S.Ct. at 1075-78. This first exception is of no applicability here.
 
 
 18
 "The second exception applies to new 'watershed rules of criminal procedure' that are necessary to the fundamental fairness of the criminal proceeding." Sawyer v. Smith, 497 U.S. 227, 241-42, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990). Arguably, the rule petitioner proposes in this case is a matter of fundamental fairness: under the present law, a defendant may be put through a second trial on a charge of which a jury unanimously acquitted him because the trial court refused to poll the jury as to a partial verdict. The argument that this is fundamentally unfair is buttressed by the Supreme Court holding that "[i]f the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair." See Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978).
 
 
 19
 Petitioner in this case, nonetheless, is barred by Teague because of that case's further explanation of what it means by "fundamental fairness." The Supreme Court limited Teague 's second exception "to those new procedures without which the likelihood of an accurate conviction is seriously diminished." Teague, 489 U.S. at 312-313, 109 S.Ct. at 1076-1077. Refusal to poll a jury as to partial verdict prior to granting a mistrial does not appear to us to seriously diminish the likelihood of obtaining an accurate conviction; therefore, the second Teague exception does not apply and Teague bars our grant of petitioner's writ on this basis.[3] Cf. Caspari v. Bohlen, 510 U.S. 383, ----, 114 S.Ct. 948, 956, 127 L.Ed.2d 236 (1994) (holding that application of Double Jeopardy Clause to successive non-capital sentencing is not a "watershed rule of criminal procedure.").
 
 
 20
 B. Denial of Motion for Directed Verdict as to First Degree Murder
 
 
 21
 Petitioner contends that his Fourteenth Amendment right to due process was violated by allowing submission to the jury of the charge of first-degree murder. See M.C.L. § 750.316 ("Murder ... perpetrated by means of ... wilful, deliberate, and premeditated killing ... is murder of the first degree...."). Petitioner argues that the evidence could not have supported such a charge. There was therefore no justification for the submission to the jury of such a charge and, concludes the argument, petitioner was prejudiced, in spite of acquittal, because the conviction for second-degree murder may have been a "compromise" verdict. Appellant's Brief at 30 (citing Price v. Georgia, 398 U.S. 323, 331, 90 S.Ct. 1757, 1762, 26 L.Ed.2d 300 (1970)). Thus, if there was sufficient evidence from which to conclude that petitioner was guilty of first degree murder, then this argument must fail.[4]
 
 
 22
 When reviewing a state court conviction with regard to sufficiency of the evidence, a federal habeas corpus court must consider whether there was sufficient evidence to justify a rational trier of fact's finding of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. at 2789.
 
 
 23
 As did the Michigan Court of Appeals, People v. Daniels, 192 Mich.App. 658, 482 N.W.2d 176 (1991), and the federal District Court, we find that the record in this case, excluding evidence challenged in this appeal (see, infra, Section II.D), provides sufficient evidence for a charge of first-degree murder. Petitioner pursued decedent with a gun. He tracked him down and shot him. He then followed him, engaged him in mortal combat, stabbing him several times, during which petitioner was alleged to have declared his intent to kill his victim. On these facts, a rational trier of fact could have found petitioner guilty of first degree murder beyond a reasonable doubt; therefore the jury instructions cannot not be held to have deprived petitioner of a fair trial.
 
 
 24
 C. Refusal to Voir Dire Jury as to Racial Prejudice
 
 
 25
 The trial court denied defense counsel's request to voir dire prospective white jurors on the issue of racial prejudice, concluding that such questions were irrelevant in light of the fact that the case concerned a black defendant and a black victim. Petitioner, on the other hand, argues that questions concerning racial prejudice were relevant because both parties were black, the facts involved a violent confrontation, and non-black jurors may have concluded that the case did not merit serious consideration because both parties were black. Such factors are insufficient, however, to establish a special circumstance of constitutional proportions which trigger the requirement of voir dire, upon defendant's request, on the issue of racial prejudice. See Turner v. Murray, 476 U.S. 28, 33, 106 S.Ct. 1683, 1686, 90 L.Ed.2d 27 (1986).
 
 
 26
 Cases in which the United States Supreme Court has required the opportunity for defense voir dire on the issue of racial prejudice involved situations of extraordinary racial tension. Compare Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973) (in prosecution of southern black civil rights activist for marijuana possession whose defense was that he was "framed," opportunity to voir dire on bias constitutionally required); Turner v. Murray, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986) (underlying facts of interracial violence in capital case, opportunity to voir dire on bias constitutionally required); with Ristaino v. Ross, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976) (underlying facts of black defendant and white victim insufficient, standing alone, to constitutionally require opportunity to voir dire on bias).[5] Furthermore, the Supreme Court has made clear that we accord state trial courts particularly wide discretion with regard to the propriety of voir dire questions. Mu'Min v. Virginia, 500 U.S. 415, 424, 111 S.Ct. 1899, 1904, 114 L.Ed.2d 493 (1991).[6] There was no constitutional violation in failing to ask the requested questions under the circumstances in this case.
 
 
 27
 D. Introduction of Alleged Hearsay Testimony
 
 
 28
 Finally, petitioner questions the constitutionality of his conviction on account of the trial court's admission of Delores Turner's signed statement to police. A police officer testified that he took the statement of Delores Turner on the night of the murder of David Reese, and she made that statement that, in talking with her husband, Joseph Turner, Sr., petitioner had "said that he was tired of [David Reese] and was going to kill him." JA at 287 (Turner's husband did not testify at trial because of an illness causing loss of memory. Appellant's Brief at 6). Petitioner argues that this evidence was inadmissible hearsay and that its admission deprived him of a fair trial.
 
 
 29
 The Michigan Court of Appeals concluded that, whether the offered testimony constituted hearsay or not, its admission was harmless error.[7] People v. Daniels, 192 Mich.App. 658, 482 N.W.2d 176 (1991). Employing the less probing harmless error analysis required in habeas proceedings, we agree. See Chapman v. California, 386 U.S. 18, 20, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1966) (some constitutional errors may be harmless); Arizona v. Fulminante, 499 U.S. 279, 306-09, 111 S.Ct. 1246, 1263-64, 113 L.Ed.2d 302 (1991) ("trial type" errors amenable to harmless error analysis); Brecht v. Abrahamson, 507 U.S. 619, 635-39, 113 S.Ct. 1710, 1721-22, 123 L.Ed.2d 353 (1993) (articulating harmless error standard for habeas cases).
 
 
 30
 We do not believe that the error in this case, to the extent there was one, had substantial and injurious effect or influence in determining the jury's verdict. The disputed evidence was most probative of the intent element of the first degree charge of which petitioner was acquitted. Furthermore, it was not the only evidence in the record supportive of a finding of intent. See, supra, Section IIB.
 
 III.
 
 31
 For the foregoing reasons, we AFFIRM the District Court in its denial of petitioner's request for a writ of habeas corpus.
 
 
 
 *
 The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Petitioner's Brief at 40 appears to suggest that defense counsel requested "a single question" regarding racial prejudice but the record is otherwise
 
 
 [2]
 We note that none of the several federal courts who have addressed this question have found such precedent. See Fitzgerald v. Lile, 732 F.Supp. 784, 789-90 (N.D.Ohio), aff'd., 918 F.2d 178 (6th Cir.1990) (no requirement of sua sponte inquiry where no suggestion of partial verdict); Mayfield v. Maloney, 749 F.Supp. 1151, 1160-61 (D.Mass.), aff'd., 923 F.2d 839 (1st Cir.1990) (no duty to inquire into hung jury's deliberations on lesser included offense); JA at 345 (District Court denying petition on these grounds and citing Arizona v. Washington, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978)); Kenyatta v. Smith, 1989 WL 39496, * 18 (S.D.N.Y., Mar.16, 1989) (no constitutional requirement to poll even where jury announced in open court that it had reached a partial verdict but does not announce what it is); cf. Wallace v. Havener, 552 F.2d 721 (6th Cir.1977) (where trial judge knows of unanimity on several counts, Double Jeopardy Clause bars retrial on those counts regardless of the fact that jury is hung as to other counts)
 
 
 [3]
 We recognize the argument that the risk of conviction of innocent people increases on retrial. See Price v. Georgia, 398 U.S. 323, 331, 90 S.Ct. 1757, 1762, 26 L.Ed.2d 300 (1970) (discussing the danger of compromise verdicts); Arizona v. Washington, 434 U.S. 497, 503-04 & n. 13, 98 S.Ct. 824, 829-30 & n. 13, 54 L.Ed.2d 717 (1978); Mary S. O'Keefe, Note, Acceptance of Partial Verdicts as a Safeguard Against Double Jeopardy, 53 FORDHAM L. REV. 889, 892 n.18 (1985) (citing Janet E. Findlater, Retrial After a Hung Jury: The Double Jeopardy Problem, 129 U. PA. L. REV . 701, 713 (1981) (defendant's diminished resources on retrial increase risk of wrongful conviction); Note, Twice in Jeopardy, 75 YALE L.J. 262, 278 n.74 (1965) (statistical calculation of the possibility of unjust conviction on retrial)). Nevertheless, to the degree that such a risk exists, we still cannot say with confidence that it is of such a degree that it seriously diminishes the likelihood of obtaining an accurate conviction. See Teague, 489 U.S. at 336-37, 109 S.Ct. at 1089-90 (Brennan, J., dissenting) ("Habeas claims under the Double Jeopardy Clause will ... be barred under the plurality's approach if the rules they seek to establish would break new ground or impose a new obligation on the States ... because they bear no relation to the petitioner's guilt or innocence." (citations omitted))
 
 
 [4]
 It is not clear that we must reach the question of the sufficiency of the evidence at all in this case. Some courts, under similar facts have concluded that submission to the jury of a charge constituted harmless error in light of petitioner's acquittal on that charge. See, e.g., Howard v. United States, 389 F.2d 287, 292 (D.C.Cir.1967); United States v. Alexander, 471 F.2d 923, 966 (D.C.Cir.), cert. denied, 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972); United States v. Dent, 477 F.2d 447 (D.C.Cir.1973). This circuit, however, has yet to directly address this question and because we feel in this case that the sufficiency of the evidence is unambiguous, we decide the case on that basis
 
 
 [5]
 "The fact of interracial violence alone is not a 'special circumstance' entitling the defendant to have prospective jurors questioned about racial prejudice." Turner v. Murray, 476 U.S. 28, 35 n. 7, 106 S.Ct. 1683, 1688 n. 7, 90 L.Ed.2d 27 (1986). A fortiori, it would seem the fact of intra-racial violence alone does not constitute such "special circumstances."
 
 
 [6]
 We further note that defendant was convicted by a jury composed of nine blacks and three whites, diminishing any likelihood that defendant suffered prejudice as a result of his inability to query prospective jurors on racial prejudice. Government's Brief at 30; People v. Daniels, 192 Mich.App. 658, 667, 482 N.W.2d 176 (1992) (noting defendant's assertion of such a racial composition)
 
 
 [7]
 The Michigan Court of Appeals decided the hearsay issue in this case on the basis of a trial record which differed from the one before us. That court understood the prosecution to have read, before the jury, the following question and answer from Delores Turner's statement:
 Question: What time did [defendant] get to your house the first time?
 Answer: It was around 11:45 p.m. It took a good while. My husband tried to talk to him, but said he said he was tired of David and was going to kill him.
 Daniels, 192 Mich.App. at 668, 482 N.W.2d 176 (emphasis added).
 Our transcript of that same testimony, JA at 451, reports that the prosecutor said, "My husband tried to talk to him, but he said he was tired of David and was going to kill him."
 The difference of one word makes an extra layer of hearsay testimony. Nevertheless, because we agree with the Michigan Court of Appeals that the admission of the statement was harmless, the record's ambiguity does not prevent our resolution of this issue.