**Walter Rydale WILLIAMS, Petitioner,**

v.

**Kurt JONES, Respondent.**

**Civil No. 00–CV–10250–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

Oct. 30, 2002.

Frank D. Eaman, Lawrence J. Paolucci, Bellanca, Beattie, Harper Woods, MI, for Plaintiff.

Laura G. Moody, Vincent J. Leone, Michigan Department of Attorney General, Lansing, MI, for Defendant.

## *OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING PETITIONER'S COUNSEL'S MOTION TO WITHDRAW*

LAWSON, District Judge.

The petitioner, Walter Rydale Williams, is presently confined at the Chippewa Correctional Facility in Kincheloe, Michigan. He has filed, through counsel, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he challenges his conviction and sentence for second-degree murder contrary to Mich. Comp. Laws § 750.317. He claims that his constitutional rights under the Due Process Clause of the Fourteenth Amendment were violated when the state trial judge allowed the jury to consider the charge of first-degree murder despite the lack of evidence supporting that charge, thereby raising the prospect of a compromise verdict, and that he was penalized for exercising his right to a jury trial because his sentence of thirty to fifty years in custody for second-degree murder was substantially greater than a sentence offered by the prosecution in a plea bargain that was rejected before trial. The Court finds that the state court's decision that there was sufficient evidence to support the first-degree murder charge was not an incorrect or unreasonable application of federal law as established by the Supreme Court; and that sentence did not give rise to a presumption of vindictiveness, nor was there any evidence of vindictiveness requiring a hearing or other relief. The Court, therefore, will deny the petition. The petitioner's attorney has also filed a motion for permission to withdraw. The Court finds that counsel for the petitioner has established that he is entitled to that relief, and the Court will grant that motion.

## I.

The petitioner shot Tyrone Billings to death on March 18, 1994 in Saginaw, Michigan. Billings and the petitioner had been friends for several years, but their relationship had soured and Billings had threatened the petitioner in the more recent past. On the day of the shooting, the two encountered each other on a public street around midday. They were in separate vehicles. Billings exited his vehicle, walked over to the car driven by the petitioner, and an argument quickly ensued. The petitioner shot Billings, and later claimed that he acted in self-defense and that he fired only to scare Billings, not intending to hit him.

The petitioner was charged with open murder, which under state law includes the charge of first-degree murder, Mich. Comp. Laws § 750.316, 750.318; *see People v. McKinney,* 65 Mich.App. 131, 135, 237 N.W.2d 215, 218 (1975); possession of a firearm in the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b; and being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f. Before trial began, the prosecutor offered to reduce the murder charge to second-degree murder with a recommended minimum sentence not to exceed fourteen years in exchange for the defendant's guilty plea. The petitioner rejected that plea offer and the matter was taken before the trial judge where the following colloquy took place:

> THE COURT: All right. So this is going to necessitate a trial is what you're telling the Court?

> THE DEFENDANT: Yes.

THE COURT: All right. Are there any housekeeping matters before the jury joins us?

Tr. Vol. I at 5. At that point, the trial judge severed the felon in possession charge and proceeded to trial on the murder and felony firearm charges.

John Streeter, a city bus driver who witnessed the shooting, testified that he stopped his bus about five to fifteen feet behind two cars that were stopped side by side in the street. Mr. Streeter saw Billings get out of his car which was stopped nearest the curb and approach the front passenger side of the petitioner's car, which was stopped in the second lane. Billings leaned into the petitioner's car, then leaned back out. Two people got out of the petitioner's car. Billings initially started walking toward the petitioner, but then headed back towards the front passenger door of the petitioner's car. Mr. Streeter heard a single gunshot and saw the driver from the car parked nearest the curb stagger back and run off. Mr. Streeter believed that the man who was shot had his hands at his side when he was shot.

Other witnesses testified that Billings was gesturing with his hand as he leaned into the petitioner's car and that he appeared to be arguing with the people in the petitioner's car before the shooting. Medical evidence established that Billings died from a single gunshot wound to the left chest. Various witnesses testified that when Billings leaned into the car, he threatened to harm or kill the petitioner, using the gun that the petitioner had in a holster on the front seat. No witness testified that Billings was armed, although one witness said that Billings had his hand in his pocket. After he was shot, Billings ran a short distance down the street and collapsed on the sidewalk. No weapon was found on or about Billings.

The petitioner testified on his own behalf. He said that Billings had threatened to kill him and had previously done things to intimidate him, like shooting up the car of a man the petitioner knew. The petitioner also once witnessed Billings pull a gun on a woman to collect a debt. The petitioner testified that Billings sometimes followed him in a car, blocked his path, rammed his car, and showed him guns. The petitioner admitted that on the day of the shooting, he stopped his car on the street when Billings stopped his car, explaining that he wanted to talk things over and feared that if he did not stop, Billings would follow him home. The petitioner said that when Billings approached his car, the petitioner's gun was in view on the front seat. Billings allegedly reached for it, saying he was going to kill the petitioner with his own gun. The petitioner testified that he then grabbed the gun and fired a single shot to scare Billings away from his car, that he did not intend to shoot or kill Billings, that Billings was out of his line of sight when he fired the gun, and that it was an accident that the bullet took effect. The petitioner denied planning to use the gun when he stopped the car and denied intentionally shooting Billings.

At appropriate times during the trial, the petitioner moved to dismiss the first-degree murder charge for want of sufficient evidence. The trial judge denied the motions. The jury found the petitioner guilty of felony firearm and the lesser included offense of second-degree murder. The petitioner then pled guilty to the felon in possession charge. On November 1, 1994, the petitioner was sentenced to two years in custody for the felony firearm charge, and a consecutive term of thirty to fifty years for second-degree murder to be served concurrently with a one-to-five-year term for felon in possession. The petitioner appealed his conviction to the Michigan

Court of Appeals on grounds which included his sufficiency of evidence and jury compromise claims. The court of appeals affirmed the conviction and the Michigan Supreme Court denied leave to appeal. *People v. Williams,* No. 182343 (Mich.Ct. App. November 12, 1996); *lv. den.* No. 108176 (Mich.Sup.Ct. November 7, 1997).

On October 20, 1998, the petitioner filed a petition for writ of habeas corpus in the United States District Court for the Western District of Michigan. He voluntarily dismissed that petition without prejudice so that he could return to state court to raise his vindictive sentencing claim. He did so on November 4, 1998 by filing a motion for relief from judgment in the trial court. On July 15, 1999, the trial judge denied that motion on the merits, finding that the plea bargain and sentence recommendation was never presented to the court for consideration, there was nothing in the record that would support a presumption of vindictiveness, and there was no evidence that the sentence was vindictive or otherwise intended to penalize the petitioner's exercise of his right to trial. The petitioner's application for leave to appeal was denied by the Michigan Court of Appeals on initial consideration and rehearing, and the Michigan Supreme Court similarly denied leave to appeal on June 26, 2000. *People v. Williams,* No. 221219 (Mich.Ct.App. December 22, 1999); *lv. den.* No. 116363 (Mich. Sup.Ct. June 26, 2000). Both courts denied relief in their form orders stating that the petitioner "fail[ed] to establish entitlement to relief under M.C.R. 6.508(D)."

The petitioner filed the present petition on July 21, 2000 in which he raises two grounds for relief:

I. Was petitioner deprived of Due Process of Law under the Fifth and Fourteenth Amendments of the United States Constitution when the trial court denied his motion for a directed verdict on the first-degree murder charge and allowed submission of this charge to the jury, when there was insufficient evidence to present this charge to the jury, and its submission prejudiced the jury, resulting in his conviction of second-degree murder?

II. Was petitioner denied his right to exercise his right to a jury trial when, after he refused to plead guilty to second-degree murder where the prosecutor had offered to recommend a fourteen year minimum sentence, the trial judge sentenced him to a thirty year minimum sentence after his jury trial conviction of second-degree murder?

The respondent has filed an answer to the petition contending that the first claim lacks merit and the second was procedurally defaulted.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA), altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Because the petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.

*Id.* at 410, 120 S.Ct. 1495.

[A]n unreasonable application of federal law is different from an incorrect application of federal law. Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 365, 411, 120 S.Ct. 1495. *See also Lewis v. Wilkinson,* No. 02–0350, 307 F.3d 413 (6th Cir.2002).

With these standards in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

### A.

In his first claim, the petitioner contends that the evidence at trial was insufficient to establish that he intended to kill Billings, and that his intent to kill was premeditated and deliberate. Because those are necessary elements of the crime of first-degree murder under state law, he reasons, that charge should not have been submitted to the jury. The petitioner fur-

ther argues that the fact the jury convicted him of only second-degree murder does not cure this error because the jury never should have been permitted to consider a charge unlawfully submitted to them since it improperly might have formed the basis for a compromise verdict. The petitioner notes that this theory is well accepted by the Michigan courts. *See People v. Vail,* 393 Mich. 460, 227 N.W.2d 535 (1975).

This claim was presented to and rejected by the Michigan courts on the petitioner's direct appeal. The Michigan Court of Appeals held that:

> Viewed in a light most favorable to the prosecution, *People v. Hampton,* 407 Mich. 354, 285 N.W.2d 284 (1979), a rational trier of fact could have found defendant's guilt of first-degree murder proved beyond a reasonable doubt based on eyewitness testimony indicating that defendant elected to stop the vehicle he was driving, blocking traffic, in order to engage in a verbal dispute with the victim, that after an exchange of a few words the victim was returning to his vehicle near the curb when defendant exited the driver's side of his vehicle, walked around to the rear to obtain a clear field of fire, and without provocation and in cold blood shot the victim once, inflicting a fatal wound. *People v. Gonzalez,* 178 Mich.App. 526, 532–33, 444 N.W.2d 228 (1989). Accordingly, the trial court did not err in denying defendant's motion for a directed verdict on the charge of first-degree (open) murder, and the jury's verdict cannot have been the result of improper compromise. *Cf. People v. Vail,* 393 Mich. 460, 227 N.W.2d 535 (1975).

*Williams,* No. 182343.

The claim that the possibility of a compromise tainted the jury deliberations and implicated the petitioner's due process rights was raised in *Daniels v. Burke,* 83 F.3d 760 (6th Cir.1996). There the court expressed uncertainty about whether it was required to reach the question of the sufficiency of the evidence, noting that "[s]ome courts, under similar facts have concluded that the submission to the jury of a charge constituted harmless error in light of petitioner's acquittal on that charge." *Id.* at 765 n. 4 (citations omitted). The panel avoided the prejudice question, however, because it found that the evidence of premeditation was unambiguously sufficient and affirmed the district court's denial of the writ on that basis.

■ Although the *Daniels* court addressed the merits of the claim, it must be noted that federal courts now may grant habeas relief only if the state court's adjudication of a claim resulted in a decision that was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). "[A] federal court must find a violation of law 'clearly established' by holdings of the Supreme Court, as opposed to its *dicta,* as of the time of the relevant state court decision." *Harris v. Stovall,* 212 F.3d 940, 944 (6th Cir.2000) (quoting *Williams,* 529 U.S. at 412, 120 S.Ct. 1495).

On the question of compromise and prejudice, the petitioner relies mainly on *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), in which the defendant originally was charged with murder but was convicted of voluntary manslaughter in his first trial. The manslaughter conviction was reversed on appeal due to an error in jury instructions, and the state then retried the defendant on the murder charge. He was again convicted of voluntary manslaughter. On review, the Supreme Court held that the second prosecution for murder violated the prohibition against double jeopardy because the first jury implicitly acquitted the defendant of murder by convicting him only of volun-

tary manslaughter. The Supreme Court stated that jeopardy on the murder charge ended when the first jury was given the chance to return a verdict on that charge, but instead only convicted the defendant on the lesser charge. The Court then reversed the conviction over the state's argument that the double jeopardy error was harmless because the defendant was convicted of the same crime at both trials and suffered no greater punishment after the second conviction. The Supreme Court rejected this argument in part because it could not determine whether the murder charge may have "induced the jury to find [the defendant] guilty of the less serious offense of voluntary manslaughter rather than continue to debate his innocence." *Id.* at 331, 90 S.Ct. 1757.

The Supreme Court's harmless error analysis in *Price* establishes the rule that the unconstitutional submission of a greater charge to a jury is not harmless beyond a reasonable doubt simply because the jury convicts on a lesser, but properly submitted, charge. It makes little difference that the basis upon which the submission was improper is the Double Jeopardy Clause or the Due Process Clause. The net effect is the same. Thus, if the trial judge's submission of the first-degree murder charge in the petitioner's trial violated the constitution, the error would not have been harmless because the jury may have improperly considered, and compromised from, a charge to which it never should have been exposed. To hold otherwise would constitute an unreasonable application of *Price*.

■ In this case, the petitioner contends that his due process rights were violated because there was insufficient evidence to support the charge of first-degree murder. The state court of appeals held that the evidence satisfied the standard set forth in *People v. Hampton,* 407 Mich. 354, 285 N.W.2d 284 (1979). That decision, in

turn, is based on *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There is no question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 318, 99 S.Ct. 2781.

> But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318–19, 99 S.Ct. 2781 (internal citation and footnote omitted) (emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16, 99 S.Ct. 2781.

■ In Michigan, first-degree premeditated murder requires a finding that the defendant committed a homicide with premeditation and deliberation. *See People v. Morrin,* 31 Mich.App. 301, 328, 187 N.W.2d 434, 449 (1971). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Id.* at 329, 187 N.W.2d at 449.

■ Under Michigan law, while the minimum time required to premeditate "is incapable of exact determination, the inter-

val between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.' " *Vail*, 393 Mich. at 469, 227 N.W.2d at 539. "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson v. Hofbauer*, 159 F.Supp.2d 582, 596 (E.D.Mich.2001) (citing *People v. Berthiaume*, 59 Mich.App. 451, 456, 229 N.W.2d 497 (1975)).

■ In the present case, the court of appeals pointed to specific evidence in the record which supported an inference that the petitioner, with sufficient time to reflect, "without provocation and in cold blood shot the victim once, inflicting the fatal wound." *Williams*, No. 182343. The record contains evidence that Billings and the petitioner had been feuding, the petitioner carried a weapon in his car, on the day of the incident the petitioner voluntarily stopped his car when Billings stopped his, the petitioner admitted that he could have driven off but instead chose to stay and confront Billings, Billings was unarmed, and the petitioner fired a clear shot into Billings' chest. Of course, there was other evidence in the record which contradicted these inferences and which would have supported a verdict of manslaughter or even self defense. But the Court is obliged to view the evidence in the light most favorable to the prosecution, *Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781, and the jury was not required to accept the petitioner's version of the facts. Because the state court found that the record evidence was sufficient to prove the petitioner's intent to kill, premeditation and deliberation was not contrary to or an unreasonable application of federal law as established by the Supreme Court.

## B.

■ The respondent contends that the state courts rejected the petitioner's second claim based on vindictive sentencing on the ground that the petitioner defaulted on a state procedure, and that this procedural default constitutes an adequate and independent basis for the state courts' decision. The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167–69, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir.1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *see Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■■■■■ For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States*, 975 F.2d 1207, 1213–14 (6th Cir.1992), *cert. denied*, 507 U.S. 932, 113 S.Ct. 1314, 122 L.Ed:2d 702 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729–30, 111 S.Ct. 2546. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002).

■■■■■ If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

The petitioner's vindictive sentencing claim was not raised in the state courts on direct appeal, but rather on collateral review. The last state court from which the petitioner sought review, the Michigan Supreme Court, denied relief in a standard order "for failure to establish entitlement to relief under M.C.R. 6.508(D)." *Williams*, No. 116363. The text of Mich. Ct. R. 6.508(D) states:

(D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief.

As used in this subrule, "actual prejudice" means that,

(i) in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal;

(ii) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceed-

ings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;

(iii) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case;

(iv) in the case of a challenge to the sentence, the sentence is invalid.

The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

This clearly is a rule of procedure intended to mimic the federal "cause and prejudice" test. *See Wainwright v. Sykes*, 433 U.S. 72, 82, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The respondent notes that in *Simpson v. Jones*, 238 F.3d 399 (6th Cir.2000), the Sixth Circuit held that a statement by the Michigan Supreme Court that a defendant "failed to 'meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)' " constituted invocation of "an independent and adequate state procedural rule" sufficient to "prevent[ ] federal habeas review." *Id.* at 407–08. In that case, the petitioner filed two motions for collateral review in the state court following his direct appeal. The trial court granted partial relief on the first and the petitioner never appealed the adverse portion of that ruling. The state trial judge denied the second motion on the basis of Mich. Ct. R. 6.508(D) alone and did not address the merits of those claims. The state supreme court's order denying leave to appeal, albeit a form order, was responsive to the issue addressed by the lower court. A similar result occurred in *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir.2002), in which the state trial court denied post-conviction relief both on the merits and on the ground of procedural default. *Id.* at 413–14.

 The problem with applying the *Simpson* and *Burroughs* rationale in this case, however, is that the last *reasoned* state court judgment—the trial court's decision denying the motion for relief from judgment—reached the merits of the claim, never invoking a procedural bar, and the state never made the procedural default argument in the state appellate courts. The petitioner was not called upon to address the issue in the state court because the state trial court ignored it and the respondent never put the issue in play. The procedural issue, quite simply, was never litigated by either of the parties, and the form orders of the state appellate courts referencing Mich. Ct. R. 6.508(D) constitute little more than a *non sequitur*. The Court finds that the procedural circumstances in this case are materially different than in *Simpson* and *Burroughs*, which therefore do not govern the issue. Given the reasoning of the state trial judge who adjudicated the merits of the vindictive sentencing issue, and in the context of the entire proceedings, the Court finds that the state procedural bar raised by the respondent does not constitute an adequate and independent basis for the state courts' decisions on this issue in this case.

 Turning to the merits, it is undisputed that the prosecution offered to recommend a fourteen year minimum sentence if the petitioner would agree to plead guilty to second-degree murder and felony firearm, and that the sentence following trial on these identical charges was substantially greater. The petitioner contends that the trial judge's thirty year minimum sentence imposed after trial was vindictive retaliation for his decision to plead not guilty. The petitioner offers no evidence in support of this claim, but ar-

gues instead that the discrepancy between the thirty year minimum and the fourteen year minimum sentence which the prosecution offered to recommend is so great that it establishes a presumption of vindictiveness which at least required the trial court to hold an evidentiary hearing.

 A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. When the same judge imposes a greater sentence after the defendant successfully appeals the first conviction, a presumption arises that the sentence is vindictive. *See North Carolina v. Pearce,* 395 U.S. 711, 726, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). "[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear in the record." *Ibid.* Courts have interpreted this rule in the case of an increased sentence following retrial to support "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin,* 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). However, in *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Supreme Court held "that no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial." *Id.* at 795, 109 S.Ct. 2201.

 The Court in *Smith* observed that a sentencing judge has considerably more relevant sentencing information after trial than is generally available when the defendant pleads guilty. During a trial, "the judge may gather a fuller appreciation of the nature and extent of the crimes charged" and gain "insights into [the defendant's] moral character and suitability for rehabilitation." *Id.* at 801, 109 S.Ct. 2201. In addition, "after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Ibid.* Thus, it is not reasonable to presume that a longer sentence imposed after trial was motivated by unconstitutional vindictiveness. Where there is no reasonable likelihood that the sentence is the product of actual vindictiveness on the part of the sentencing authority, the burden is on the defendant to prove actual vindictiveness in the sentencing decision. *Id.* at 799, 109 S.Ct. 2201.

In the present case, the petitioner was not resentenced after retrial following a successful appeal, or after overturning or withdrawing a guilty plea. Rather, he was sentenced after conviction at trial following his decision to reject a plea bargain and plead not guilty. No presumption of vindictiveness arises in this context from the trial judge's thirty year minimum sentence and the petitioner bears the burden of proving that actual judicial vindictiveness motivated the sentence he received after trial. *See Wasman v. United States,* 468 U.S. 559, 567–68, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).

There is no such evidence in this case. In fact, as the trial judge noted, there was no guarantee, even with the prosecutor's plea offer, that the court would have accepted the sentencing limitation.

 It is beyond debate that a defendant cannot be punished for exercising his constitutional right to stand trial. *See Cousin v. Blackburn,* 597 F.2d 511 (5th Cir.1979); *United States v. Underwood,* 588 F.2d 1073 (5th Cir.1979); *Baker v. United States,* 412 F.2d 1069 (5th Cir. 1969). "It is improper for a[ ] judge to penalize a defendant for exercising his constitutional right to plead not guilty and go to trial, no matter how overwhelming the evidence of his guilt." *United States v. Derrick,* 519 F.2d 1, 3 (6th Cir.1975).

However, the mere imposition of a longer sentence than defendant would have received had he pled guilty and had the court accepted his guilty plea does not automatically constitute vindictive or retaliatory punishment. The Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiated plea be refused. *Corbitt v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978); *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). It is equally clear that a defendant is free to accept or reject the bargain offered by the state. Once the bargain—whether it be reduced charges, a recommended sentence, or some other concession—is rejected, however, the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is presumptive evidence of judicial vindictiveness.

The petitioner offered no evidence of actual vindictiveness. The petitioner never made an offer of proof suggesting that a hearing would disclose any such evidence. The state trial judge's denial of the petitioner's post-conviction motion for relief from judgment and her decision not to hold a hearing therefore was not contrary to, or an unreasonable application of, any Supreme Court precedent.

### III.

The attorney for the petitioner has also filed a motion to withdraw as counsel, citing a breakdown in the attorney-client relationship and the failure of the petitioner and his family to comply with the fee agreement. The petitioner himself initially responded to the motion contending that he is untrained in the law, and he would be at a great disadvantage if his attorney were permitted to withdraw. Subsequently, however, the petitioner sent a letter to his attorney requesting the return of all of his transcripts, suggesting that he acquiesces in the motion to withdraw.

The Court notes that despite the apparent fee dispute, the petitioner's attorney fully briefed the issues raised in the habeas petition, and that throughout this case the petitioner has had the benefit of representation by very capable counsel. Now that the case is decided, one might consider that the motion to withdraw is rendered moot. However, in order to avoid any confusion for continued representation, and to clarify the allocation of responsibility for applying for a certificate of appeal or filing a notice of appeal, the Court will adjudicate the motion.

Michigan Rule of Professional Conduct (M.R.P.C.) 1.15 permits an attorney to withdraw from representing a client in pending litigation if (1) withdrawal can be accomplished without material adverse effect on the client's interest, (2) the client has substantially failed to fulfill his obligation and was given fair notice that withdrawal would result, (3) continued representation would result in an unreasonable financial burden on the lawyer, and (4) the client expresses dissatisfaction with the lawyer's performance. The Court finds that counsel for the plaintiff has established grounds entitling him to the relief requested. Allowing withdrawal of counsel at this point in the proceedings will not prejudice the petitioner's interests in this case.

### IV.

The Court finds that there are no procedural bars which prevent consideration of the merits of either of the petitioner's claims. However, the petitioner's conviction and sentence do not contravene the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED** with prejudice.

It is further **ORDERED** that the motion by the petitioner's attorney to withdraw as counsel of record [dkt # 18] is **GRANTED,** and counsel is hereby discharged from any further responsibility in the matter.

It is further **ORDERED** that the petitioner's *pro se* motion to produce documents [dkt # 20] is **DENIED** as moot.