Kyall William ALDRICH, Petitioner,

v.

Barbara BOCK, Respondent.

No. 03–CV–71599–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 14, 2004.

Kyall Aldrich, Freeland, MI, Petitioner Pro Se.

Laura G. Moody, Brenda E. Turner, Michigan Department of Attorney General, Lansing, MI, for Respondent.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CLELAND, District Judge.

On April 24, 2003, Petitioner Kyall Aldrich filed an application for a writ of habeas corpus, which was referred to Magistrate Judge Mona K. Majzoub for a report and recommendation. Magistrate Judge Majzoub filed her report and recommendation on March 19, 2004, recommending that Petitioner's application be denied. Petitioner filed objections to the report on April 8, 2003. For the reasons set forth below, the court rejects Petitioner's objections and will adopt the magistrate judge's report and recommendation.

## I. BACKGROUND

On November 2, 1998, after a jury trial, Petitioner was convicted on one count of involuntary manslaughter committed with a motor vehicle, Mich. Comp. Laws § 750.321. On December 2, 1998, Petitioner, a habitual offender under Michigan law, was sentenced to 15–30 years imprisonment. The offense for which Petitioner was convicted involved a two-car collision that occurred during, or just after, a drag race between Petitioner and his brother, which resulted in the death of a fifteen-year-old girl.

## II. STANDARD

The filing of timely objections requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). See *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context. A party who files timely objections to a magistrate's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The Supreme Court upheld this rule in *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), a habeas corpus case. The Supreme Court noted that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 147, 106 S.Ct. 466 (footnote omitted).

Further, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Smith v. Detroit Federation of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)

A general objection to the magistrate's report has the same effect as a failure to

object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. The duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *Howard v. Secretary of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir.1991).

## III. DISCUSSION

Petitioner's first objection curiously argues that the magistrate judge incorrectly determined that he failed to exhaust his state remedies and thus could not pursue habeas relief under 28 U.S.C. § 2254. The magistrate judge, however, made no such finding in her report and recommendation. Rather, she concluded that Petitioner was "rais[ing] the five claims that he raised in the state courts," including the leave for appeal filed with the Michigan Supreme Court. There was no exhaustion analysis in the report, and the magistrate judge thoroughly considered the substance of each claim. Accordingly, the court rejects Petitioner's first objection as moot.[1]

Petitioner's objection #2 also is rejected. The objection merely restates the arguments, and the same facts, presented to and rejected by the magistrate judge.

The court, however, agrees with the magistrate judge's suggestion that no constitutional error occurred by way of prosecutorial misconduct or through a *Brady* violation. The Win Crash test "results" that Petitioner claims were improperly withheld by the prosecution amounted to nothing more than a message that an error occurred during the attempted reconstruction test. The results were meaningless, and thus immaterial. *See Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (citation omitted) ("evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.").[2] Further, the magistrate judge correctly recommended that the court reject Petitioner's prosecutorial misconduct claim. Petitioner claims that one fleeting comment by the prosecutor, equivocally suggesting that Petitioner and his brother were intending to engage in sexual activity with a minor, rendered his trial unfair. As the magistrate judge concluded, "the prosecutor's isolated, oblique reference to sexual activity did not deprive petitioner of a fair trial," where it was "one sentence in a trial involving over 40 witnesses and encompassing over 1300 transcript pages of testimony." (03/19/04 R & R at 15–16.)

In his third objection, comprising only one sentence, Petitioner argues that the

---

1. Even if the magistrate judge had concluded that Petitioner failed to exhaust his § 2254 claims in state court, such a conclusion would have been warranted because Petitioner admitted that he did not raise certain claims before the state courts. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (to obtain habeas consideration a petitioner must fairly present his claims to state court). There is no authority to support his claim that his co-defendant brother's appeal of certain issues should be ascribed to Petitioner for exhaustion purposes.

2. Further, the "result" would likely be inadmissible as irrelevant under state law. *See* Mich. R. Evid. 401 ("Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence."); *see also Wood v. Bartholomew*, 516 U.S. 1, 5–6, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995) (finding that evidence that is inadmissible under state law is not material for purposes of establishing a *Brady* violation).

magistrate judge erred in concluding that the testimony regarding the rescue of the vehicle's occupants was not so prejudicial as to render his trail unfair. Petitioner provides no new argument or facts with this objection. Rather, he simply expresses his disagreement with the magistrate judge's conclusion. Such a conclusory statement cannot be characterized as an objection. In any event, the court has thoroughly reviewed the magistrate judge's reasoning and will adopt her recommendation for the reasons set forth in the report and recommendation.

Petitioner's objection # 4 also does not object to the magistrate judge's recommendation with any specificity. The magistrate judge is correct that Petitioner's acquittal on the second-degree murder charge renders the trial court's denial of his motion to dismiss that charge harmless. Further, sufficient evidence existed to permit the court to present this charge to the jury for consideration. (*See* 03/19/04 R & R at 23–24 (detailing the evidence supporting the second-degree murder charge).) Accordingly, the court rejects this objection.

Finally, Petitioner objects to the magistrate judge's suggestion that the trial court did not err in refusing to instruct on the defense of abandonment or intervening causation. Again, this objection does nothing more than state Petitioner's disagreement with the magistrate judge's proposed resolution of his habeas claim, and thus should not be considered an "objection" within the meaning of 28 U.S.C. § 636(b)(1). Nonetheless, the court has considered the merits of Petitioner's habeas claim, and, for the reasons set forth in the magistrate judge's report and recommendation, finds that no constitutional error occurred as a result of the trial court's refusal to give the relevant instructions. Thus, Petitioner will be denied habeas relief.

## IV. CONCLUSION

IT IS ORDERED that the magistrate judges Report and Recommendation [Dkt. # 29] is ADOPTED.

IT IS FURTHER ORDERED that the Petition for habeas relief [Dkt. # 1] is DENIED.

### *REPORT AND RECOMMENDATION*

MAJZOUB, United States Magistrate Judge.

*Table of Contents*

I. RECOMMENDATION .................................................750

II. REPORT ........................................................750
 A. Procedural History .......................................750
 B. Factual Background Underlying Petitioner's Conviction .....................751
 C. Standard of Review .......................................752
 D. Prosecutorial Misconduct Claims ................................753
 1. Suppression of Evidence ...............................754
 a. Factual Background Relating to the Suppressed Evidence ...........754
 b. Clearly Established Law.............................755
 c. Analysis .......................................755
 2. Presentation of Evidence/Closing Argument .........................757
 a. Clearly Established Law.............................757
 b. Presentation of Kevin Campbell's Testimony .......................758
 c. Closing Argument Comments ...........................758
 E. Evidentiary Claims........................................759
 1. Clearly Established Law ...............................759

 2. BAC Test Results ............................................759
 3. Rescue Evidence and Photographs...................................760
 F. Submission of Second Degree Murder Charge ...........................761
 1. Effect of Acquittal ....................................................761
 2. Sufficiency of the Evidence .........................................762
 a. Clearly Established Law.......................................762
 b. Analysis .............................................................762
 G. Instructional Error Claims .......................................................763
 1. Clearly Established Law .........................................764
 2. Analysis.................................................................764
 H. Conclusion ...................................................................766

III. NOTICE TO PARTIES REGARDING OBJECTIONS ........................766

I. *RECOMMENDATION:* This Court recommends that petitioner's application for the writ of habeas corpus be denied.

II. *REPORT:*

A. *Procedural History*

1. Petitioner Kyall William Aldrich is a state prisoner, currently confined at the Saginaw Correctional Facility in Freeland, Michigan.

2. On November 2, 1998, petitioner was convicted on one count of involuntary manslaughter committed with a motor vehicle, MICH. COMP. LAWS § 750.321, following a jury trial in the Saginaw County Circuit Court. Petitioner was tried jointly with his brother and co-defendant, Kris Aldrich. On December 2, 1998, petitioner was sentenced as an habitual offender, third offense, MICH. COMP. LAWS § 769.11, to a term of 15–30 years' imprisonment.

3. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I. WAS MR. ALDRICH DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW BY THE CONDUCT OF THE PROSECUTOR?

II. WAS MR. ALDRICH DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE TRIAL JUDGE REFUSED TO LIMIT THE PROSECUTOR'S USE OF TWO HIGHLY PREJUDICIAL PHOTOGRAPHS DEPICTING THE DECEDENT AND THE DAMAGE TO DEFENDANT'S CAR, AND WHEN THE TRIAL COURT REFUSED TO LIMIT TESTIMONY REGARDING THE RESCUE OF THE MUSICKS FROM THEIR BURNING VEHICLE?

III. DID THE TRIAL COURT ERR IN ADMITTING BLOOD–ALCOHOL EVIDENCE AGAINST BOTH DEFENDANTS?

IV. WAS MR. ALDRICH DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE TRIAL JUDGE DENIED HIS MOTION FOR DIRECTED VERDICT OF ACQUITTAL ON THE CHARGE OF SECOND DEGREE MURDER?

V. WAS MR. ALDRICH DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE TRIAL JUDGE REFUSED DEFENSE REQUESTS FOR A MODIFIED INSTRUCTION ON THE DEFENSE OF ABANDONMENT AND FOR AN

INSTRUCTION ON INTERVEN-
ING CAUSE?

The Court of Appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Aldrich,* 246 Mich.App. 101, 631 N.W.2d 67 (2001).

4. Petitioner sought leave to appeal these three issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Aldrich,* 640 N.W.2d 873 (Mich.2002).

5. Petitioner, through counsel, filed the instant application for a writ of habeas corpus on April 24, 2003. As grounds for the writ of habeas corpus, he raises the five claims that he raised in the state courts.

6. Respondent filed her answer on November 4, 2003. She contends that petitioner's claims are either not cognizable on habeas review or meritless. Additionally, she contends that portions of petitioner's prosecutorial misconduct claim are procedurally defaulted.

B. *Factual Background Underlying Petitioner's Conviction*

Petitioner's trial involved the presentation of over 40 witnesses and encompasses over 1300 transcript pages of testimony. This voluminous evidence was accurately summarized by the Michigan Court of Appeals:

Defendants' involuntary manslaughter convictions stem from a two-car collision that occurred during a drag race between defendants, who are brothers, the evening of May 6, 1998. The victim was a fifteen year-old girl, Jennifer Fear, who was a passenger in Kris Aldrich's vehicle at the time of the collision. The prosecutor's theory of the case was that defendants picked up Jennifer, bought and consumed some whiskey, then went drag racing at speeds up to one hundred miles an hour, when defendant Kris Ald-

rich, with Jennifer in his vehicle, ran a stop sign and collided with another vehicle, causing Jennifer's death. Counsel for defendant Kris Aldrich conceded that defendants were drinking and engaging in "horseplay," including exceeding the speed limit, but argued that any reckless driving had ended at the time of the accident and that the accident was the result of brake failure. Defendant Kyall Aldrich also claimed that any reckless driving had ceased before the accident.

At trial, many witnesses testified that they observed defendants drag racing down a two-lane stretch of Roosevelt Road on May 6, 1998, at approximately 8:30 p.m. Defendants' vehicles were racing side by side along Roosevelt Road, thereby occupying the whole roadway including the lane reserved for oncoming traffic. Kris Aldrich's vehicle was occupying the lane reserved for oncoming traffic. Witnesses indicated that the vehicles were traveling "extremely" fast, at speeds approaching ninety miles an hour. Kris Aldrich's vehicle was observed ducking in and out of the oncoming traffic lane to avoid colliding with vehicles traveling in the opposite direction.

The vehicles approached the intersection of Roosevelt and Hemlock. There is a stop sign at this intersection for vehicles traveling on Roosevelt Road; Hemlock has the right of way. Witnesses testified that the drag race was ongoing as the vehicles approached the intersection. Melissa Musick and her mother, Sherry Musick, were traveling along Hemlock Road approaching the intersection at Roosevelt Road. As they passed through the intersection, Kris Aldrich's Beretta failed to stop at the stop sign and collided with the Musicks' vehicle. The Musicks' vehicle spun out of control "and ended up upside down in

the ditch, on fire." Kris Aldrich's vehicle ended up in the field alongside the roadway. Jennifer Fear, the passenger in Kris Aldrich's vehicle, was killed in the accident and her body was found lying outside the Beretta.

Although Kyall Aldrich denied drag racing and told police that he had been driving 1–1/2 miles behind his brother at the time of the accident, witnesses testified that defendants' vehicles were still engaged in the drag race just before the accident. In fact, witness Nicholas Scoles observed defendants' vehicles racing seconds before the accident occurred, just as the vehicles approached the intersection of Hemlock and Roosevelt Roads. Melissa Musick, the driver of the vehicle that collided with Kris Aldrich's vehicle, confirmed that in the seconds before the accident, defendants' vehicles were speeding along the roadway, side by side, although she admitted that Kyall Aldrich's vehicle did not stop at the stop sign.

Kris Aldrich told police at the scene that Jennifer had been driving his vehicle at the time of the accident and that he was sitting in the back seat. He also told police that he could not remember if he had been drag racing. Neither defendant could remember where they were going when the accident occurred.

At trial, Kris Aldrich admitted that beginning around 7:00 p.m. on the night of the incident in question, he, Kyall, and Jennifer had been drinking whiskey mixed with Pepsi. At around 8:30 p.m., the three decided to go to Kyall's house. Kris and Jennifer took the Beretta, with Kris driving, and Kyall drove the red pickup truck. According to Kris, he was driving on Roosevelt at approximately fifty-five or sixty miles an hour. Kris testified that he attempted to pass Kyall's red pickup truck, but pulled back in behind Kyall when another vehicle appeared. Subsequently, Kyall slowed down to approximately twenty miles an hour and signaled for Kris to pull alongside him, and that the two conversed about stopping at a convenience store. Kris stated that he then "took off first and got in front of Kyall's car." Kris testified that as he approached the intersection, at approximately fifty miles an hour, he started to slow down for a stop sign, but that "the brake pedal went right to the floor and wasn't stopping no more." He then entered the intersection and collided with the vehicle being driven by Melissa Musick.

After hearing the above evidence, the jury convicted both defendants of involuntary manslaughter. Defendants received fifteen- to thirty-year sentences.

*Aldrich,* 246 Mich.App. at 106–10, 631 N.W.2d at 72–73 (footnotes omitted).

C. *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy,* 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). "A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, ——, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405–06, 120 S.Ct. 1495); *see also, Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Bell*, 535 U.S. at 694, 122 S.Ct. 1843. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court] but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, ——, 123 S.Ct. 2527, 2534–35, 156 L.Ed.2d 471 (2003) (quoting *Williams*, 529 U.S. at 413, 120 S.Ct. 1495); *see also, Bell*, 535 U.S. at 694, 122 S.Ct. 1843. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at ——, 123 S.Ct. at 2535 (citations omitted); *see also, Williams*, 529 U.S. at 409, 120 S.Ct. 1495.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, " § 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412, 120 S.Ct. 1495. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412, 120 S.Ct. 1495).

■ Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases-indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8, 123 S.Ct. 362; *see also, Mitchell*, 540 U.S. at ——, 124 S.Ct. at 10. Further, although the requirements of "clearly established law" is to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir.2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n. 3 (1st Cir.2000); *Dickens v. Jones*, 203 F.Supp.2d 354, 359 (E.D.Mich. 2002) (Tarnow, J.).

D. *Prosecutorial Misconduct Claims*

Petitioner first contends that the prosecutor committed misconduct at his trial.

First, he contends that the prosecutor suppressed exculpatory evidence. Second, petitioner argues that the prosecutor presented the invalid testimony of Deputy Kevin Campbell. Finally, he argues that the prosecutor made improper comments during closing and rebuttal argument.

### 1. Suppression of Evidence
#### a. Factual Background Relating to the Suppressed Evidence

Petitioner contends that the prosecutor suppressed a Win Crash computer analysis of the crash performed by Sergeant William Brandt of the Michigan State Police. At trial Sgt. Brandt, who was qualified as an expert in accident reconstruction, testified that he was unable to make a determination of the speed of either vehicle in the crash or of the impact speed. *See* Trial Tr., Vol. VIII, at 1648. When asked why he could not determine a speed, Sgt. Brandt explained:

> With not having the plotting of the [skid] marks, again, the departure angle I could use where they went off the paved portion to the grass, those points that were located there. However, then as far away as that was, it could leave questions of was there some—because there was a crown to the roadway. Could there have been some of that— crown induced the vehicle to curvature just a little bit? Which would change the angle, the approach angle. I had an approximate approach angle based on what I did. There is—there is some room in there for error with the way I did that.
>
> So I've got a lot of variables that I could plug into the formulas and I could work up a speed, but that speed would be in question.

*See id.* Asked specifically about the Win Crash computer program, Sgt. Brandt explained that the program does not contain a variable for whether the vehicle becomes airborne, and there was evidence that both vehicles in the crash had become airborne at some point. *See id.* at 1650. On cross-examination, Sgt. Brandt was asked whether he had run a Win Crash analysis. He responded: "I attempted to run a Win Crash program. I kept getting an error in the program, based on the information that was being put into it." Trial Tr., Vol. IX, at 1668. Sgt. Brandt explained that because Kris's vehicle went airborne, he did not have an accurate measure of the speed for that distance. This resulted in the separation velocity calculated by the computer being smaller than the skid-end velocity, a physical impossibility which the computer does not accept. *See id.* at 1668–69. Thus, the program "basically didn't like what [Sgt. Brandt] had in there and said there was an error and these results are no good." *Id.* at 1669–70.

Thomas Bereza, a veteran of the Michigan State Police and one of the developer's of the State Police's accident reconstruction program, testified as an expert on behalf of petitioner and his brother. Bereza testified that Kris's car was traveling no more than 36 miles per hour at the time of the crash based on a Win Crash analysis he performed, and was more likely traveling closer to 20 miles per hour. *See* Trial Tr., Vol. IX, at 1723, 1747–48. He based his opinion on the rest locations of the vehicles, and the damage that each vehicle sustained. *See id.* at 1748, 1751–53, 1805–06.

Following the jury's verdict, petitioner filed a motion for new trial asserting that Sgt. Brandt had suppressed the results of a Win Crash analysis he had performed. At a hearing on the motion, Sgt. Brandt [1] testified that he ran a Win Crash analysis

---

1. It appears that by the time of the hearing on petitioner's motion, Sgt. Brandt had been promoted to Lieutenant. For simplicity, I continue to refer to him as Sgt. Brandt.

after receiving a copy of Bereza's Win Crash report, to see if the results obtained with his numbers were the same as Bereza's results. Sgt. Brandt testified that the velocities determined by the program were "58.7 for the Lumin a, plus or minus 15.3 miles an hour; and 40.6, plus or minus 10.5 miles an hour, for the Baretta [Kris's car]." Mot. for New Trial Tr., dated 5/3/99, at 13. He also testified, however, that the program noticed a spin calculation error, and the report advised that "results useless when true, rerun." *Id.* at 11.

### b. Clearly Established Law

■ The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell,* 218 F.3d 581, 601 (6th Cir.2000); *Luton v. Grandison,* 44 F.3d 626, 628–29 (8th Cir.1994); *see also, Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter,*

218 F.3d at 601. If all three of these questions are answered in the affirmative, petitioner has established a constitutional error entitling him to the writ of habeas corpus, and "there is no need for further harmless-error review." *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). If, on the other hand, any of these questions is answered in the negative, then petitioner has failed to establish a *Brady* violation.

### c. Analysis

■ Petitioner contends that the result of Sgt. Brandt's Win Crash analysis, reflecting a speed for Kris's car of 40.6 miles per hour, plus or minus 10.5 miles per hour, would have contradicted the testimony of the eyewitnesses who estimated the speeds to be much greater, and would have buttressed the testimony of his accident reconstruction expert. The Michigan Court of Appeals rejected petitioner's claim, reasoning that

[t]here is no dispute that the computer printout contained invalid test results and was therefore disregarded by Sgt. Brandt. Hence, it seems the prosecutor's witness did not suppress material evidence. Instead he disregarded invalid evidence. In any event, we cannot see how defendants were denied a fair trial by the prosecutor's failure to provide them with a report containing invalid information.

*Aldrich,* 246 Mich.App. at 112, 631 N.W.2d at 74. The Court should conclude that this determination is a reasonable application of *Brady* and its progeny, and thus that petitioner is not entitled to habeas relief on this ground.

The Court need not resolve whether the results of the Win Crash test were suppressed by the prosecution,[2] or whether

**2.** I do note, however, that this issue is questionable. The trial court found, as a factual matter, that Sgt. Brandt's Win Crash analysis was performed one day before his testimony. *See* Mot. for New Trial Tr., at 20. And, at trial, Sgt. Brandt testified that he had at-

they were favorable to petitioner, because the Michigan Court of Appeals's conclusion that the results were not material was reasonable. Although petitioner maintains that Sgt. Brandt's Win Crash analysis produced a "result," *i.e.*, that Kris's car was traveling at 40.6 miles per hour (plus or minus 10.5 miles per hour), the truth of the matter is that the program did not, in fact, produce a result. Effectively, the program reported the "result" that it had reached was meaningless because, as a matter of physics, the variables underlying the result could not be true. As Judge Whitbeck explained in his concurring opinion:

> [T]he Win Crash analysis never actually produced a result. Evidently, the Win Crash software relies on measurements taken from the ground and, because the Baretta left the ground when it flew over the ditch, Sgt. Brandt had to estimate other numbers to enter into the Win Crash program to replace missing ground measurements. The Win Crash software was able to determine that the numbers he entered did not, or perhaps could not, accurately describe the physical forces at work, because the "spin calc" was erroneous. Although, taken at face value, the printout of the Win Crash analysis "reported" results on page five, the Win Crash software noted that Sgt. Brandt had not provided the date necessary to *complete* the analysis even though the software indicated what it would conclude had those numbers been true. Consequently, the Win Crash report stated that the analysis had to be performed again, indicating to any reader that the report should be read as if page five were blank because the erroneous calculations were of no consequence.

*Aldrich*, 246 Mich.App. at 138, 631 N.W.2d at 87 (Whitbeck, J., concurring). In other words, "[t]he Win Crash analysis itself warned that the speeds it had calculated 'are useless when true,' indicating that they were false calculations. Having virtually ordered the individual inputting the data to 'Rerun!' the program, no one can doubt that the Win Crash analysis had failed to reach a result, regardless of the statistical measures of validity that could shake or shore up confidence in any particular result." *Id.* at 140, 631 N.W.2d at 88.

▇ Viewed in this light, even if the purported "result" of Sgt. Brandt's analysis was both suppressed and favorable to petitioner, it was not material under *Brady* and its progeny. Exculpatory "evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler*, 527 U.S. at 280, 119 S.Ct. 1936 (quoting *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). There is no such reasonable probability here, for two reasons.

First, had either the prosecution or defense attempted to introduce the "result" of Sgt. Brandt's analysis, it is doubtful that it would have been admissible into evidence. Under the Michigan Rules of Evidence, "[e]vidence which is not relevant is not admissible." MICH. R. EVID. 402. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MICH. R. EVID. 401. Here, the Win Crash analysis did not produce a re-

---

tempted to run the program, but that the result was unreliable. At this point, counsel for petitioner was aware of the attempt to run the program, but did not inquire specifically as to whether it gave a result for the speed of Kris's vehicle, regardless of the reliability of that result. Furthermore, counsel did not request from Sgt. Brandt or the prosecutor a copy of the actual report at that time.

sult, as explained above. "Inconclusive test results do not have a tendency to make the existence of any consequential fact more or less probable and, therefore, the test results are not relevant." *United States v. White Horse,* 177 F.Supp.2d 973, 976 (D.S.D.2001), *aff'd,* 316 F.3d 769 (8th Cir.2003). Thus, the "results" of Sgt. Brandt's analysis would likely have been inadmissible had petitioner sought to introduce them. *See Aldrich,* 246 Mich.App. at 140, 631 N.W.2d at 88 (Whitbeck, J., concurring) (noting that the evidence was likely inadmissible under Rule 401). Evidence which is inadmissible under state law is, by definition, not material for purposes of establishing a *Brady* violation. *See Wood v. Bartholomew,* 516 U.S. 1, 5–6, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995) (per curiam).

Second, even if the results would have been admissible, petitioner cannot show a reasonable probability that the jury's verdict would have been affected by this evidence. The jury would have learned not only that the Win Crash program gave a "result" of 40.6 miles per hour for Kris's car, but also that the very same report stated that this result was meaningless and that the program should be run again. It is doubtful, to say the least, that after accepting the testimony of the eyewitnesses and rejecting the testimony of petitioner's expert, the jury would have been swayed to give credence to such an inconclusive and unreliable result from the Win Crash program. It certainly cannot be said that the Michigan Court of Appeals's determination to this effect was unreasonable in light of existing law. *See United States v. Fontaine,* 575 F.2d 970, 975 (1st Cir.1978) (inclusive voice test not material); *Bell v. Coughlin,* 820 F.Supp. 780, 787 (S.D.N.Y.) (FBI ballistics report not material where findings were mixed and allegedly exculpatory portions of tests were inconclusive), *aff'd,* 17 F.3d 390 (2d Cir. 1993); *People v. Lewis,* 105 Ill.2d 226, 85 Ill.Dec. 302, 473 N.E.2d 901, 908 (1985)

(inconclusive hair test not material); *Averhart v. State,* 614 N.E.2d 924, 928 (Ind. 1993) (inconclusive gun shot residue tests not material); *Sadler v. State,* 846 P.2d 377, 383 (Okla.Crim.App.1993) (inconclusive DNA test not material). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his suppression of evidence claim.

### 2. *Presentation of Evidence/Closing Argument*

Petitioner also argues that the prosecutor committed misconduct by introducing improper evidence and by making improper comments during closing arguments.

#### a. *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecu-

tor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

### b. Presentation of Kevin Campbell's Testimony

Petitioner first contends that the prosecutor committed misconduct by introducing the testimony of Deputy Kevin Campbell. He argues that the prosecutor should have known that Campbell's testimony was invalid because (a) Campbell admitted on cross-examination that his speed calculations included certain ambiguities, and (b) his speed calculations were contradicted by Sgt. Brandt, whose testimony the prosecutor also presented. The Michigan Court of Appeals rejected petitioner's claim, concluding that petitioner "withdrew his objection to the presentation of Deputy Campbell's testimony because he wanted to refer to Deputy Campbell's speed calculations during closing argument. He has, therefore, waived this claim of error on appeal." *Aldrich,* 246 Mich.App. at 111, 631 N.W.2d at 74. Respondent argues that petitioner's claim is therefore procedurally defaulted.

■■■■ The Court need not address the procedural default argument, however, because it is clear that the prosecutor committed no misconduct in presenting the testimony of Deputy Campbell. The presentation of contradictory evidence by the prosecution, without evidence that any of the testimony was perjured and that the prosecutor knew of the perjury, alone does not amount to improper conduct. *See United States v. Sherlock,* 962 F.2d 1349, 1364 (9th Cir.1989); *United States v. Griley,* 814 F.2d 967, 971 (4th Cir.1987). Nor does the less than certain nature of Deputy Campbell's speed calculation amount to misconduct. This was a matter that was explored by the prosecutor and petitioner's counsel vigorously, not only with respect to

Deputy Campbell but also with respect to Sgt. Brandt and petitioner's expert. Thus, this was a matter of credibility to be decided by the jury, and the introduction of the testimony was not improper. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Closing Argument Comments

■■■■ Petitioner next contends that the prosecutor improperly suggested, during closing arguments, that he and his brother intended to sexually assault the 15–year–old victim. He argues that there was no evidence to support this assertion, and that it was irrelevant and highly prejudicial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

In the context of talking about the evidence that petitioner and his brother had been drinking, the prosecutor made the following comment:

> But we're not even done yet, ladies and gentlemen. Let's talk a little bit about the alcohol. Kris Aldrich picked up Jenny Fear at 5:30. I mean, you got a 20–year–old man picking up a 15–year–old girl, and then he meets up with his brother, who is 21. They go to a store to buy the cheapest whiskey they could find. What are they going to do? Try to get her drunk; and then what? They were going over to Kyall Aldrich's house, according to Kris.

Trial Tr., Vol. XI, at 2047. The prosecutor then discussed at length the evidence supporting the conclusion that petitioner and his brother had been drinking heavily before the crash. *See id.* at 2047–49.

While this comment was arguably improper, the Court should conclude that it did not deprive petitioner of a fair trial. The remark was isolated, reflecting one sentence in a trial involving over 40 wit-

nesses and encompassing over 1300 transcript pages of testimony. Further, the comment only obliquely suggested that petitioner intended to engage in some sort of sexual activity with the victim, and was subsumed within the broader context of the prosecutor's discussion of the evidence of alcohol use. Further, there was substantial evidence presented that petitioner and his brother had been drinking and drag racing at excessive speeds, the actual issues involved in the case. In these circumstances, the prosecutor's isolated, oblique reference to sexual activity did not deprive petitioner of a fair trial. *See Toler v. McGinnis*, 23 Fed. Appx. 259, 269–70 (6th Cir.2001); *United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir.1996); *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this ground.

### E. *Evidentiary Claims*

Petitioner next raises several claims challenging the admission of certain evidence at his trial. First, petitioner contends that he was denied a fair trial by the introduction of the results of blood alcohol content (BAC) tests. Second, petitioner contends that he was denied a fair trial by the introduction of prejudicial evidence relating to the rescue of Musicks from their vehicle and photographs of his brother's car after the accident. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

### 1. *Clearly Established Law*

 It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v.*

*Ylst*, 921 F.2d 882, 885 (9th Cir.1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws"). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not amount to an error of constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir.1987). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir.1999); *see also, Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir.2001). Where a specific constitutional right—such as the right to confront witnesses or to present a defense—is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and ... the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

### 2. *BAC Test Results*

Petitioner first contends that the trial court erred in admitting the results of a BAC test performed on him after the accident. On appeal, petitioner argued that the admission of the BAC test results violated MICH. COMP. LAWS § 257.625a in several respects, and that the results should

not have been admitted because he was not actually involved in the accident. The Michigan Court of Appeals rejected these claims. *See Aldrich,* 246 Mich.App. at 115–22, 631 N.W.2d at 76–79.

 As noted above, whether or not the Michigan Court of Appeals correctly analyzed the admissibility of this evidence under § 257.625a is irrelevant because habeas relief may not be predicated upon an error of state law. Rather, the only question here is whether the admission of the evidence rendered petitioner's trial fundamentally unfair. Petitioner cannot make this showing because, as observed by the Michigan Court of Appeals, the BAC test results were cumulative "of the other evidence presented to indicate that defendants had been drinking before the collision, including Kris' own admission that he and Kyall had been drinking whiskey before the crash." *Aldrich,* 246 Mich.App. at 119, 631 N.W.2d at 78. In light of the substantial other evidence that petitioner and his brother had been drinking, the admission of the BAC test results did not deprive petitioner of a fair trial. *See Hood v. Helling,* 141 F.3d 892, 897 (8th Cir. 1998); *Sherman v. Scott,* 62 F.3d 136, 142 n. 6 (5th Cir.1995); *Restrepo v. Dipaolo,* 1 F.Supp.2d 103, 107 (D.Mass.1998). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 3. Rescue Evidence and Photographs

 Petitioner also contends that he was denied a fair trial by the admission of cumulative evidence of the rescue of the Musicks from their burning vehicle after the crash, and by the admission of photographs depicting Kris' car and Fear's body. The Michigan Court of Appeals rejected these claims.

With respect to the rescue evidence, the court reasoned that

a jury is entitled to hear the 'complete story' of the matter in issue. It would have been perplexing to the jury to learn that a violent two-car collision had occurred but not what became of the occupants of one of the vehicles. In any event, defendants have not demonstrated that they were prejudiced by the admission of evidence, from several sources, concerning the Musicks' rescue from their vehicle after the collision. This evidence did not bear on defendants' guilt or innocence.

*Aldrich,* 246 Mich.App. at 115, 631 N.W.2d at 75–76 (citations omitted). This determination was reasonable. As the court of appeals correctly observed, the rescue evidence was part of the entire circumstances surrounding the crime charged, and was therefore necessary to give the jury a complete picture of the incident. Thus, the evidence was probative and its admission did not deny petitioner a fair trial. *See Walters v. Maschner,* 151 F.Supp.2d 1068, 1107 (N.D.Iowa 2001) (no denial of fair trial by admission of "bad acts" evidence "because the evidence 'completes the picture' of the crimes charged and had actual probative value beyond any 'propensity' effect, and also because Walters can show no prejudice from admission of the evidence, where overwhelming, independent evidence established his guilt on all of the crimes charged."); *United States v. Kennedy,* 29 F.Supp.2d 662, 684 (D.Colo.1998), *aff'd,* 225 F.3d 1187 (10th Cir.2000).

 With respect to the photographic evidence, the Michigan Court of Appeals reviewed the photographs and concluded that they were "neither shocking nor inherently prejudicial." *Aldrich,* 246 Mich. App. at 115, 631 N.W.2d at 76. The court further explained that "[t]he photographs were offered to aid witnesses in their description of the victim's condition at the accident scene as well as the condition of

Kris' vehicle after the collision, both matters that were relevant to physical facts." *Id.* This conclusion was reasonable. The admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial. *See United States ex rel. Jones v. Gilmore,* 945 F.Supp. 158, 161 (N.D.Ill. 1996); *Caccavallo v. Duckworth,* 626 F.Supp. 427, 432 (N.D.Ind.1984). Because the photographs were relevant, petitioner cannot show that he was denied a fair trial by their admission into evidence. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his evidentiary claims.

### F. Submission of Second Degree Murder Charge

Petitioner next claims that he was denied a fair trial by the trial court's denial of his motion for a directed verdict on the charge of second degree murder and the submission of that charge to the jury. Petitioner contends that there was insufficient evidence supporting a second degree murder charge, and that he was prejudiced by its submission to the jury. The Michigan Court of Appeals rejected this claim, concluding that there was sufficient evidence to submit the charge to the jury. *See Aldrich,* 246 Mich.App. at 123–24, 631 N.W.2d at 80. The Court should conclude that petitioner is not entitled to habeas relief on this claim, for two reasons.

#### 1. Effect of Acquittal

■ As an initial matter, it is doubtful that petitioner's claim presents an issue cognizable on habeas review. The Ninth Circuit's unpublished decision in *Perez v. Prunty,* No. 94–55501, 1994 WL 651888 (9th Cir. Nov.18, 1994), is instructive. In *Perez,* the petitioner challenged various jury instructions given by the trial court, claiming that the erroneous instructions deprived him of a fair trial. The court rejected the petitioner's claim because he

had been acquitted on the charges to which the erroneous instructions related. The court reasoned:

> We need not decide whether the state trial court's instructions constituted a constitutional error because the error, if any, was harmless beyond a reasonable doubt. The state trial court gave the challenged definitions of "malice" and "willful" in relation to the charge of shooting at an occupied vehicle. Since Perez was acquitted of that particular charge, no prejudice resulted.

*Perez,* 1994 WL 651888, at *2; *see also, Howard v. United States,* 389 F.2d 287, 292 (D.C.Cir.1967). In *Daniels v. Burke,* 83 F.3d 760 (6th Cir.1996), the Sixth Circuit recognized that "[s]ome courts, under similar facts have concluded that submission to the jury of a charge constituted harmless error in light of petitioner's acquittal on that charge." *Id.* at 765 n. 4. However, the court found it unnecessary to decide the issue in light of the fact that the evidence of first degree murder was sufficient to submit that charge to the jury. *See id.·* In *King v. Trippett,* 27 Fed.Appx. 506 (6th Cir.2001), the court found that any error in the submission of charge was harmless where the petitioner was acquitted of that charge. *See id.* at 510; *see also, Johnson v. Hofbauer,* 159 F.Supp.2d 582, 597 (E.D.Mich.2001) (Tarnow, J.). *But see Williams v. Jones,* 231 F.Supp.2d 586, 593–94 (E.D.Mich.2002) (Lawson, J.) (finding this claim cognizable).

The conclusion reached in *Perez* and in the cases cited by the *Daniels* court is the conclusion that must be reached in habeas cases decided under the AEDPA. Clearly established Supreme Court law provides only that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Court has never held that sub-

mission of charge upon which there is insufficient evidence violates a defendant's constitutional rights where the defendant is acquitted of that charge.

### 2. *Sufficiency of the Evidence*

Further, even assuming that this claim is cognizable, petitioner is not entitled to relief on the merits of the claim.

#### a. *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris,* 972 F.2d 675, 678 (6th Cir.1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley,* 2 F.3d 645, 650 (6th Cir.1993). However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo,* 106 F.3d 192, 198–200 (7th Cir.1997), *vacated on other grounds sub nom. Gomez v. DeTella,* 522 U.S. 801, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997); *Restre-*

*po v. Dipaolo,* 1 F.Supp.2d 103, 106 (D.Mass.1998).

■■■ While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard ... has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York,* 432 U.S. 197, 211 n. 12, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *see also, Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. 2781; *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999).

■■■ Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. To. establish second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse,* 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron,* 409 Mich. 672, 713–14, 299 N.W.2d 304, 319–20 (1980).

#### b. *Analysis*

■■■ Here, petitioner contends that there was insufficient evidence that he acted with malice aforethought to submit the second degree murder charge to the jury.

The Michigan Court of Appeals disagreed, explaining:

> Here, there was evidence to indicate that defendants intentionally committed an act, drag racing at very high speeds into an intersection while intoxicated, that was in disregard of life-endangering consequences and that was in wanton and willful disregard of the likelihood that the natural tendency of such behavior was to cause death or great bodily harm. Although Kyall claims that he had ceased any reckless driving before the accident, the prosecutor presented evidence to indicate that the drag race continued up until seconds before the crash. It is the province of the jury to determine questions of fact and assess the credibility of witnesses. Because there was evidence to infer the element of malice with regard to both defendants, the question was one for the jury.

*Aldrich,* 246 Mich.App. at 123–24, 631 N.W.2d at 80 (citations and internal quotation omitted). The Court should conclude that this determination was a reasonable application of the *Jackson* standard, and thus that petitioner is not entitled to habeas relief on this claim.

Petitioner's contention that there was no evidence that he intended to create a very high risk of death or great bodily harm is belied by the record. Numerous witnesses testified that petitioner and his brother were racing down Roosevelt Road at excessive rates of speed. (*See* Trial Tr., Vol. III, at 754–55, 769–70, 778–81, 792–98; Vol. IV, at 828–30, 834–37, 851–52, 881–82, 894–95, 907–10, 916–21). These witnesses estimated that the vehicles were traveling at between 70 and 90 miles per hour. *See id.* There was also testimony that both petitioner and his brother had been drinking, and had blood alcohol contents over the legal limit. *See* Trial Tr., Vol. VI, at 1244–52, 1227–30; Vol. VII at 1456–81; Vol. X, at 1900–06. From this evidence of alcohol impairment and excessive speed the jury could conclude, beyond a reasonable doubt, that petitioner intended to create a very high risk of death or great bodily harm with knowledge that such was likely to result. *See People v. Goecke,* 457 Mich. 442, 471–72, 579 N.W.2d 868, 881–82 (1998), *habeas corpus denied sub nom. Hoskinson v. Bock,* 8 Fed.Appx. 558, 560–61 (6th Cir.2001); *People v. Mayhew,* 236 Mich.App. 112, 125–26, 600 N.W.2d 370, 379 (1999); *see also, United States v. Sheffey,* 57 F.3d 1419, 1431 (6th Cir.1995); *United States v. Fleming,* 739 F.2d 945, 948 (4th Cir.1984).

This conclusion is not altered by petitioner's claim that he had stopped racing prior to the accident, and thus abandoned any role in the death of Fear. The witnesses testified that the drag racing and excessive rate of speed continued up to seconds before the accident. "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac,* 50 F.3d 1175, 1179 (3d Cir.1995). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson,* 443 U.S. at 326, 99 S.Ct. 2781; *United States v. Sherwood,* 98 F.3d 402, 408 (9th Cir.1996).

Accordingly, the Court should conclude that the Michigan Court of Appeals's resolution of this issue was reasonable, and that petitioner therefore is not entitled to habeas relief on this claim.

### G. *Instructional Error Claims*

Finally, petitioner raises two challenges to the jury instructions given by the trial court. Specifically, he contends that he was denied a fair trial by the court's fail-

ure to give a modified instruction on the defense of abandonment, and by the court's failure to give any instruction on intervening cause. The Court should conclude that petitioner is not entitled to habeas relief on these instructional error claims.

1. *Clearly Established Law*

 It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst,* 921 F.2d 882, 885 (9th Cir.1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws"). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle,* 502 U.S. at 72, 112 S.Ct. 475 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Wood v. Marshall,* 790 F.2d 548, 551–52 (6th Cir. 1986); *cf. United States v. Sheffey,* 57 F.3d 1419, 1429–30 (6th Cir.1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle,* the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle,* 502 U.S. at 72–73, 112 S.Ct. 475 (quoting *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle,* 502 U.S. at 72 & 73 n. 4, 112 S.Ct. 475; *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle,* 502 U.S. at 71–72, 112 S.Ct. 475.

2. *Analysis*

 Petitioner first contends that he was denied a fair trial by the trial court's failure to give a modified instruction on the defense theory of abandonment. At trial, petitioner requested that the court give the modified version of the abandonment instruction set forth in Michigan Criminal Jury Instruction 9.4. *See* Trial Tr., Vol. X, at 1994. The court declined to give this instruction, reasoning that it was applicable only to attempt offenses and that petitioner's theory of the case was adequately covered by other instructions. *See* Trial Tr., Vol. X, at 1994–96. The trial court did not give a specific abandonment instruction. However, the court did set forth the elements required to establish petitioner's guilty as an aider and abettor, and then gave the following instruction regarding petitioner's theory of the case:

> The Defendant Kyall Aldrich says that he is not guilty of second-degree murder or any of its alternative or lesser included offenses ... because he did not intend to help anyone commit any of those offenses.
>
> It is not sufficient for the prosecutor to prove just that the Defendant Kyall Aldrich intended to help another in some common, unlawful activity, such as drag racing. It is necessary that the prosecutor prove beyond a reasonable doubt that the Defendant Kyall Aldrich intended to help someone else commit the

crime of murder in the second degree, or any of its above enumerated alternative or lesser included offenses.

In determining whether the Defendant Kyall Aldrich intended to help someone else commit the charged offense of murder in the second degree or any of its lesser alternative or lesser included offenses, you may consider whether any of those offenses were fairly within some common, unlawful activity such as drag racing. That is, whether the Defendant Kyall Aldrich might have expected second-degree murder, or any of its above-enumerated alternative[s] or lesser included offenses, to happen as part of that activity. There can be no criminal liability for any act not fairly within the common, unlawful activity.

· · · · ·

Even if the Defendant knew that the alleged crime was planned or was being committed, the mere fact that he was present when it was committed is not enough to prove that he assisted in committing it.

Trial Tr., Vol. XI, at 2166–68. The Michigan Court of Appeals rejected petitioner's claim, reasoning: "We have reviewed the instructions in their entirety and conclude that the instructions given by the trial court substantially covered the instruction requested by defendants and the trial court's failure to give the abandonment instruction did not seriously impair defendants' ability to effectively present a defense." *Aldrich,* 246 Mich.App. at 125, 631 N.W.2d at 80–81.

Petitioner also contends that he was denied a fair trial by the trial court's failure to give an instruction on intervening cause, premised on his brother's testimony that he attempted to stop but that the brakes failed. The Michigan Court of Appeals rejected this claim as well, reasoning that

the instructions given adequately covered the substance of the instruction requested by Kyall. The trial court's instruction that Kyall's mere presence was not enough to implicate him in the crime, and that his responsibility for the victim's death required that it have resulted from 'common' unlawful activity accompanied by the required intent element, covered the defense theory that Kyall was not participating in a drag race at the time of the fatal collision.

*Aldrich,* 246 Mich.App. at 125, 631 N.W.2d at 81. The Court should conclude that these determinations were reasonable, and thus that petitioner is not entitled to habeas relief on his instructional error claims.

■ The failure to give a defense-theory instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the petitioner's trial fundamentally unfair. *See Maes v. Thomas,* 46 F.3d 979, 984–85 (10th Cir. 1995); *Nickerson v. Lee,* 971 F.2d 1125, 1137 (4th Cir.1992). Thus, a failure to instruct does not deprive a petitioner of fundamental fairness where the instructions as a whole adequately present the defense theory to the jury. *See Duckett v. Godinez,* 67 F.3d 734, 743 (9th Cir.1995). As the Supreme Court has noted, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

Here, as the Michigan Court of Appeals explained, the jury was instructed that petitioner could be found guilty only if he had the specific intent to aid his brother in committing the crime charged, and that his mere presence or knowledge was insufficient. The jury also heard during closing argument petitioner's theory of the case, *i.e.,* that he had abandoned his partic-

ipation in the drag race. The jury could not have accepted petitioner's claim of abandonment nor his brother's claim of intervening cause without acquitting him under the instructions given by the trial court, and this Court must presume that the jury followed the court's instructions. *See Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *see also, Shannon v. United States,* 512 U.S. 573, 585, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994); *United States v. Olano,* 507 U.S. 725, 740, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

Where, as here, the instructions as a whole adequately convey the defense theory of the case to the jury, a petitioner is not entitled to habeas relief based on the trial court's failure to give a specific instruction. *See, e.g., Rodriguez v. Young,* 906 F.2d 1153, 1166 (7th Cir.1990) (habeas relief not warranted where "the instructions finally given to the jury adequately addressed the [petitioner's] theory in a general way, even if not as specifically as [he] would have liked," and the instructions, "considered together, and along with counsel's argument and cross examination . . . should have reasonably conveyed to the jury [petitioner's] theory of the case."); *Conner v. Director of Div. of Adult Corrections, State of Iowa,* 715 F.Supp. 925, 934 (N.D.Iowa 1987), *aff'd,* 870 F.2d 1384, 1388 (8th Cir.1989); *cf. United States v. Dees,* 34 F.3d 838, 842 (9th Cir.1994) (on direct review of criminal conviction, "[i]t is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his instructional error claims.

### H. *Conclusion*

In view of the foregoing, the Court should conclude that the Michigan Court of Appeals's resolution of petitioner's claims did not result in a decision which is contrary to, or which involves an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

### III. *NOTICE TO PARTIES REGARDING OBJECTIONS:*

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health & Human Servs.,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection # 1," "Objection # 2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must spe-

cifically address each issue raised in the objections, in the same order and labeled as "Response to Objection # 1," "Response to Objection # 2," etc.

March 19, 2004.